## ABEY *v.* BENNETT.

*A.* sold to *B.* all his interest in the stock of merchandize, notes and accounts, belonging to the firm of *A.* and *C.*, including the profits that had accrued in trade, and *B.* agreed to pay all the debts of the firm of *A.* and *C.* and to fully indemnify *A.* against any liability for the same. *Held,* that under such an agreement, a simple error on the books of *A.* and *C.*, by which it appeared that the firm was indebted less than it really was, or that it had more due it than was really due, was not, in the absence of fraud and misrepresentation, a matter that *B.* could set up in discharge of his liability on his part of the contract.

APPEAL from the *Wells* Court of Common Pleas.

WORDEN, J.—This was an action brought by the appellant against the appellee, upon a contract entered into by them and one *Sebastian Keely* on the 22d day of *February,* 1853, by which the said *Abey,* in consideration of 1,497 dollars, sold and conveyed to *Bennett* "all his right, title and interest to the stock of merchandize, notes and accounts owned by said *Abey* and *Keely,* trading under the name and style of *Abey & Keely,* including all the profits which had accrued in trade, and by which the said *Keely* and the said *Bennett,* jointly and severally, agreed to assume and

pay all debts against said firm, and fully indemnify the said *John Abey* against any liability for the same. It is alleged in the complaint that said contract was violated in this, that the plaintiff has not been kept indemnified, but on the contrary the said firm of *Abey & Keely* have been sued on an indebtedness of said firm in the Court of Common Pleas of said county, and judgment obtained against them for 50 dollars and costs, and that upon an execution issued thereon, the plaintiff has been compelled to pay 39 dollars and 95 cents.

May Term, 1858.<br>ABEY<br>v.<br>BENNETT.

There was a supplemental complaint filed, setting up that since the commencement of the suit the plaintiff had been compelled to pay a certain other sum; but inasmuch as it may be doubtful whether a sum paid by him since the commencement of the suit could be recovered in this action, we shall not notice any question arising on the supplemental complaint.

The defendant answered—

1. Admitting the execution of the contract, and not denying the recovery of the judgment and the payment by the plaintiff, as alleged in the complaint; but setting up for defense, that the plaintiff falsely and fraudulently represented to him that the firm of *Abey & Keely* were indebted to *Sears, Keith & Chapin* in the sum of 28 dollars and 61 cents only, and thereby induced the defendant to agree and assume to pay, jointly and severally with said *Keely*, all debts against the said firm, as specified in said agreement; whereas in fact the said firm of *Abey & Keely* were indebted to said *Sears, Keith & Chapin*, in the sum of 134 dollars and 5 cents, and the defendant was afterwards compelled to pay said *Sears, Keith & Chapin* the sum of 52 dollars, 72 cents over and above the sum so represented to be due them.

2. That the plaintiff falsely and fraudulently represented to the defendant that one *Thomas W. Vanhorn's* account to the said firm of *Abey & Keely* was 45 dollars and 46 cents, and thereby induced the defendant to purchase the interest of the said plaintiff in said account, and assume the payment of the debts of said firm, when in fact the said

*Vanhorn* was only indebted to said firm of *Abey & Keely* in the sum of 28 dollars and 3 cents.

3. The defendant set up by way of counter-claim the said sum of 52 dollars and 72 cents, and also the sum of 9 dollars and 79 cents, represented to be the interest of the said *Abey* in the account of *Vanhorn* over and above what was due.

Issues were formed upon these answers, and the cause was tried by the Court. Finding for the defendant, motion for a new trial overruled, and judgment on the finding.

The cause for new trial chiefly relied upon, was that the finding was contrary to the evidence. Exception was duly taken to the decision overruling the motion for a new trial, and there was a bill of exceptions filed setting out the evidence.

The plaintiff produced in evidence the agreement mentioned in the complaint; a judgment in the Court of Common Pleas against the said firm of *Abey & Keely*, corresponding with that described in the complaint; an execution issued thereon; and proved payment by himself thereon of the said sum of 39 dollars and 95 cents.

This we think made out a *prima facie* case for the plaintiff; and it only remains to consider whether the defense set up was proven.

The only material facts proven by the defendant were, that an error existed on the books of said firm of *Abey & Keely*, showing that said firm was indebted to *Sears, Keith & Chapin* in the sum of 28 dollars and 31 cents, when in fact they owed said house the sum of 134 dollars and 5 cents, which error originated from a draft of 100 dollars having been charged to said house when it was sent, and again charged when the receipt of it was acknowledged; and also an error in reference to the account of *Vanhorn*— the books showing that said *Vanhorn* was indebted to the firm of *Abey & Keely* in the sum of 45 dollars, whereas he was only indebted in the sum of 28 dollars and 3 cents— which error originated in said *Vanhorn's* not having credit for a county order which he alleges to have paid on said account.

This is the substance of all the testimony in the case.

There was no proof that *Abey* made any false and fraudulent representations, or any representations of any kind, in reference to the amount of the indebtedness of the firm of *Abey & Keely*, to *Sears, Keith & Chapin* or to any one else; nor was there any proof of any representations made by him in reference to the amount due the firm from *Vanhorn* or any one else. On this point there is a total lack of proof. ·Neither is there any testimony showing that *Abey* had any knowledge of the errors on the books of the firm.

It seems to us that the defense is not made out.

What *Abey* undertook to sell to *Bennett* was, all his right, title and interest to the stock of merchandize, notes and accounts, including the profits that had accrued in trade; and what *Bennett* agreed on his part to do was, to pay all the debts of the late firm and fully indemnify the said *Abey* against any liability for the same; and we think under such an agreement, a simple error on the books of the firm of *Abey & Keely*, showing that the firm was indebted less than it really was, or had more due it than it really had, in the absence of all fraud and misrepresentation, is not a matter that *Bennett* can set up in discharge of his liability on his part of the contract.

The law never presumes fraud, and the proof shows none. Had there been false representations made in reference to the items in which these mistakes existed, the case would be different. Indeed, in many cases, the suppression of the truth is as fraudulent as the suggestion of falsehood; and perhaps in this case, if while the parties were examining the books, with a view to the contract, the plaintiff,, knowing the mistakes in the books, had fraudulently concealed the same, the defendant could set it up in bar of a recovery, but there is no evidence showing that he had any such knowledge; and a man cannot be said to conceal a fact, where he has no knowledge of its existence.

Were this a case of conflicting testimony, or were the matters of evidence involved in any doubt, we should be slow to reverse it; but as there was a total failure of proof

May Term, 1858.

ABEY
v.
BENNETT.

May Term,   to sustain some of the essential elements of the defense, we
  1858.    think the judgment ought to be reversed.

THE STATE        *Per Curiam.* — The judgment is reversed with costs.
    v.      Cause remanded for a new trial.
.LONGLEY.
             *E. R. Wilson, C. Case* and *W. H. Withers,* for the ap-
         pellant.
             *J. P. Greer,* for the appellee.